IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLIFFORD L. RUSH, | |
| Petitioner, | 4:22CV3115 |
| vs. | |
| ROB JEFFREYS, | MEMORANDUM AND ORDER |
| Respondent. | |

This matter is before the Court on Petitioner Clifford L. Rush's ("Rush" or "Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, Filing No. 1, motions to appoint counsel, Filing No. 21; Filing No. 28, a motion for hearing on the request for counsel, Filing No. 22, and three motions for status, Filing No. 25; Filing No. 26; Filing No. 27. Rush's motions for status are granted to the extent that this Memorandum and Order will serve to advise Rush of the status of this case, but the motions are denied to the extent Rush seeks a status hearing. For the reasons that follow, the Court will deny the relief requested in the petition, dismiss the petition with prejudice, and deny Rush's motions regarding the appointment of counsel.

## I. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND[1]

### A. Conviction and Sentence

On April 2, 2018, pursuant to a plea agreement with the State, Rush pled no contest to an amended charge of second degree assault, a Class II felony. Filing No. 11-12 at 18–19; Filing No. 11-15 at 71–72. In exchange for Rush pleading no contest, the

---

[1] The facts relevant to the Petition and stated in this Memorandum and Order are not in dispute. The Court's recitation of the facts is primarily drawn from Respondent's Brief, Filing No. 13, Rush's Brief, in which he adopts Respondent's statement of the facts and procedural history, Filing No. 14 at 1, and the Nebraska Supreme Court's memorandum opinion on direct appeal, Filing No. 11-3.

State dropped the original five charges of terroristic threats, false imprisonment, possession of a firearm by a prohibited person, and two counts of use of a firearm to commit a felony, and it was the intent of the parties that the plea resolved all possible charges as a result of the reported events of August 7, 2017. Filing No. 11-12 at 2–3; Filing No. 11-15 at 91–92. The state district court subsequently sentenced Rush to 18 to 20 years in prison with credit given for 267 days previously served. Filing No. 11-12 at 20–21.

The factual basis provided by the State at the plea hearing established that at approximately 1:00 a.m. on August 7, 2017, law enforcement officers were detailed to an area in Lincoln, Lancaster County, Nebraska. Filing No. 11-15 at 95. There was a general report of an individual displaying a handgun; officers arrived in the area and some people directed the officers to an address that turned out to be Rush's address. Id. Officers surrounded the building and evacuated neighboring apartments. Id. Officers learned there was believed to be a woman inside the apartment. Id. At approximately 1:47 a.m., the woman, at officers' direction, climbed out of a window and a ladder was taken to the scene and she was removed from the building. Id. at 96. The woman reported she had been living with Rush in the apartment for approximately one month, that Rush asked her to leave, that she had come to the residence with four other individuals to move some of her things out, and that they were nearly finished when Rush came to the apartment. Id. The four other individuals reported a man showed up, displayed what appeared to be a silver semi-automatic handgun, and made a vague comment but did not point the gun at anyone, and the individuals were concerned and left the area and called the police. Id. The woman remained in the apartment, and she reported Rush came to the door and

entered, was upset, and demanded she return his keys. *Id*. The woman told Rush she had lost the key, and she reported that Rush threatened her with the handgun during the approximately 45 minutes they were in the apartment together. *Id*. The woman stated at one point Rush forced the gun in her mouth, causing pain and scraping the side of her cheek. *Id*. at 97. The woman then ran into the bathroom and barricaded herself in, which was what led to her leaving the residence through the window. *Id*. Officers eventually called the SWAT team, and a search warrant was obtained. *Id*. Rush ultimately came out of the apartment voluntarily. *Id*. A search of the apartment pursuant to the warrant revealed a .22 caliber semi-automatic handgun, as well as ammunition found in a bedroom drawer. *Id*.

## B. Facts Relating to Motion to Withdraw

Prior to reaching his plea agreement with the State, Rush's trial counsel filed a motion to withdraw as counsel. Filing No. 11-12 at 14. The relevant facts relating to Rush's motion are as follows:

> On October 25, Rush was arraigned on an information, with court-appointed counsel present, and entered a plea of not guilty. Following his arraignment, Rush filed several motions on a pro-se basis, including an amended motion to compel discovery and *Brady* material, which the court rejected and sent back to Rush's counsel.
>
> On November 21, Rush's trial counsel filed a motion to withdraw, alleging both that defendant requested that counsel be discharged and that counsel's current caseload will not permit counsel adequate time to respond to defendant's demands and to process this case to trial in a timely manner.

3

A hearing was held on the matter. Rush's trial counsel advised the court that he had been involved in a number of trials over the past month and had not been readily available to speak with Rush. During that time, Rush indicated to trial counsel that he wanted several motions filed. When trial counsel did not file those motions, Rush proceeded to file several pro se motions on his own behalf, all of which were rejected by the court. Further, the initial interaction between Rush and trial counsel was less than harmonious, leading Rush to claim that the attorney-client relationship had eroded and that Rush did not trust his trial counsel.

In a contentious exchange at this hearing, Rush demanded that his trial counsel be removed. The court advised Rush that if trial counsel was removed, Rush would be left to represent himself. Rush then responded, "[i]f I got to represent myself, I might as well rep (sic) - - some (sic) my own self (sic). You know what I'm saying? [Trial counsel] ain't done nothing for me since I - - since I had him."

The court then attempted to ensure that Rush's decision to remove counsel and proceed pro se was made knowingly, intelligently, and voluntarily. The court continued to attempt to ascertain Rush's competence and understanding of the right Rush was attempting to waive. However, due to Rush's numerous outbursts and interruptions, the court ultimately concluded that "[i]t is clear to me that you are absolutely not capable of representing yourself because you can't even follow the Court's simplest of directions to answer a question and to wait until I have finished." The court found that there had not been a sufficient showing for trial counsel to be discharged and the motion to withdraw was overruled.

4

Filing No. 11-3 at 4–5.

## C. Direct Appeal

Rush, with new counsel, filed a direct appeal of his conviction and sentence. Filing No. 11-1; Filing No. 11-3. On appeal, Rush alleged that: (1) the district court erred in denying trial counsel's motion to withdraw; (2) he received ineffective assistance of counsel; and (3) the district court erred and abused its discretion in imposing an excessive sentence. Filing No. 11-3 at 7; Filing No. 11-5 at 7–8. The Nebraska Supreme Court moved the appeal to its docket on its own motion, Filing No. 11-1 at 4, and, on August 22, 2019, the court entered a written memorandum opinion affirming the state district court judgment, Filing No. 11-3. Rush filed a motion for rehearing, which was denied on September 26, 2019. Filing No. 11-1 at 4.

## D. Postconviction Proceedings

On July 20, 2020, Petitioner filed a timely motion for postconviction relief in the state district court. Filing No. 11-13 at 2–28. As set forth by the state district court, Rush raised three claims in his postconviction motion: (1) the Nebraska Supreme Court erred in affirming the state district court's denial of defendant's request to represent himself; (2) the Nebraska Supreme Court erred in affirming the state district court's denial of trial counsel's motion to withdraw; and (3) the Nebraska Supreme Court erred in finding that defendant did not receive ineffective assistance of trial counsel. *Id*. at 70; *see also Id*. at 7. The state district court denied the motion for postconviction relief without an evidentiary hearing, finding all of Rush's claims to be procedurally barred. *Id*. at 68–72.

Rush appealed, and the Nebraska Court of Appeals affirmed the state district court's judgment in a published opinion entered on May 10, 2022, agreeing with the lower

5

court that Rush's postconviction claims were procedurally barred.  Filing No. 11-4; *see also* State v. Rush, 975 N.W.2d 541 (Neb. Ct. App. 2022).  Rush filed a petition for further review, which was denied by the Nebraska Supreme Court on June 13, 2022.  Filing No. 11-2 at 4.  The mandate issued on June 27, 2022.  Id.

**E.  Federal Habeas Petition**

Rush filed his habeas petition in this Court on June 30, 2022.  Filing No. 1.  Rush's cognizable habeas claims, as stated by this Court in its preliminary review of the petition,[2] are:

| | |
|---|---|
| Claim One: | Petitioner was denied his right to the effective assistance of counsel under the Sixth Amendment because the state district court denied Petitioner's requests for substitute counsel or to proceed pro se. |
| Claim Two: | Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment because trial counsel improperly advised Petitioner to plead nolo contendere. |

Filing No. 7 at 1.

Respondent filed the state court record, Filing No. 11, an answer, Filing No. 12, and a brief in support of his answer, Filing No. 13.  Rush filed a brief in response, Filing No. 14, and Respondent filed a notice of case submission, Filing No. 15, indicating that Respondent would not file a reply brief and the merits of Rush's petition were, therefore, fully submitted for decision.  As indicated above, Rush filed a motion for the appointment of counsel, Filing No. 21, and a request for hearing on that motion, Filing No. 22.  Rush

---

[2] Rush did not object to the Court's construction and statement of his claims.  Filing No. 14 at 1–2.

subsequently filed a motion renewing his request for the appointment of counsel. Filing No. 28. These matters are ripe for disposition.

## II. DISCUSSION

Respondent submits that both of Rush's habeas claims should be denied based on the Nebraska appellate court's consideration and rejection of those claims on the merits. Filing No. 13 at 7–12. Upon review, the Court agrees and concludes Rush's arguments to the contrary lack merit.

### A. Applicable Legal Standards

#### 1. Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405–06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

7

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. *Strickland* Standard for Ineffective Assistance Claims

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for petitioners to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id*. at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id*. at 687–88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Strickland*, 466 U.S. at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. *Id*. at 123. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id*. (internal quotation marks and citations omitted).

### B. Claim One

In his first habeas claim, Rush alleges the state district court violated his Sixth Amendment rights when it denied his request for substitute counsel or to appear pro se. The Nebraska Supreme Court considered and rejected this claim on direct appeal.

> Rush claims that the trial court erred in denying counsel's motion to withdraw, thus refusing to permit Rush to proceed pro se. Rush argues that a defendant's rights to self-representation plainly encompass certain specific rights to have one's voice heard and to participate in every proceeding at trial.
>
> The right of an indigent defendant to counsel does not encompass the right to be represented by counsel of his or her own choosing. Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. When a defendant becomes dissatisfied with court-appointed counsel, unless the defendant can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if competent to do so.

9

While criminal defendants have a right to self-representation under the U.S. and Nebraska Constitutions, this right is subject to a determination that a defendant has intelligently waived his or her right to counsel and is competent to proceed pro se.

The Washington Supreme Court [in *State v. Curry*, 423 P.3d 179 (Wash. 2018),] has observed that

> the right to self-representation is neither self-executing nor absolute. [Citation omitted.] In fact, the right to self-representation is in tension with another crucial constitutional right: a defendant's right to the assistance of counsel. [Citation omitted.] Because of this tension, a defendant must unequivocally request to proceed pro se before he or she will be permitted to do so. . . . This requirement protects defendants from inadvertently waiving assistance of counsel and protects trial courts from 'manipulative vacillations by defendants regarding representation.' . . . Additionally, 'a trial court must establish that a defendant, in choosing to proceed pro se, makes a knowing and intelligent waiver of the right to counsel.'

The determination of whether there has been an intelligent waiver of the constitutional right to counsel must depend upon the particular facts and circumstances of each case, including background, experience, and conduct of the accused. Further, the waiver of the right to counsel must appear affirmatively from the record before the court may conclude that the accused has waived a constitutional statutory right.

Here, when Rush was unable to show good cause for removing trial counsel, the court advised Rush of its confidence in trial counsel's experience and abilities. As Rush continued his protest regarding counsel's continued representation, the court sought to determine whether Rush was competent to proceed pro se. During the course of the court's colloquy with Rush, Rush became increasingly disruptive, failed to follow basic instructions, refused to answer basic questions, and veered off topic. Based upon its observations of Rush and his behavior, the court determined Rush was not competent to proceed pro se.

The district court did not abuse its discretion in denying trial counsel's motion to withdraw, thereby allowing Rush to proceed pro se. There is no merit to Rush's first assignment of error.

Filing No. 11-3 at 9–11 (footnotes omitted).

In reaching its decision, the Nebraska Supreme Court specifically cited to *Faretta v. California*, 422 U.S. 806 (1975), in which the United States Supreme Court recognized that the Sixth Amendment grants a criminal defendant the right to represent himself at trial without the assistance of counsel.  Filing No. 11-3 at 10 n.10.  If a defendant unequivocally and clearly requests to represent himself, then "a *Faretta* hearing must follow to ensure the defendant is knowingly and intelligently waiving counsel and to inform the defendant 'of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Bilauski v. Steele*, 754 F.3d 519, 522 (8th Cir. 2014) (quoting *Faretta*, 422 U.S. at 835 (internal quotation omitted)).  However, as the Eighth Circuit recently explained,

> This right . . . [to self-representation] "is not absolute," *United States v. Kelley*, 787 F.3d 915, 917 (8th Cir. 2015), and can be outweighed by "the government's interest in ensuring the integrity and efficiency of the trial," *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).  Thus, even if a defendant clearly and unequivocally requests self-representation, a court may deny the request when the defendant "engages in serious and obstructionist misconduct," *see Kelley*, 787 F.3d at 917 (internal quotation marks omitted), or seeks to use the right "as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process," *United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010) (internal quotation marks omitted).  "[S]elf-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46, 95 S.Ct. 2525; *cf. Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. . . . [T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.").

*United States v. Atkins*, 52 F.4th 745, 750 (8th Cir. 2022).

In this case, the record shows that after Rush indicated his dissatisfaction and distrust of trial counsel and his desire "to get rid of him," the state district court informed Rush that if he were to discharge his trial counsel, then he would be representing himself,

11

to which Rush responded he "might as well." Filing No. 11-15 at 11–12. The state district court then attempted to ask Rush questions to determine whether Rush understood "the nature of the charges against [him] and the dangers and disadvantages o[f] representing [him]self." *Id*. at 13. However, Rush did not cooperate with the court's inquiry as he would not answer the court's questions directly, would have to be asked the same question multiple times, would interrupt the court, and would speak about unrelated matters. *Id*. at 13–22. Ultimately, the state district court was unable to determine whether Rush's purported waiver of his right to counsel was made knowingly and intelligently due to Rush's own obstructionist and uncooperative behavior. Based on the record, the Nebraska Supreme Court's conclusion that the state district court did not err in denying Rush's counsel's motion to withdraw and, consequently, Rush's request to proceed pro se is a reasonable application of federal law.

Accordingly, the Court finds that there was no unreasonable application of the United States Supreme Court precedent to the facts of this case, and the state court did not "unreasonably extend[ ] a legal principle from our precedent to a new context where it should not apply or unreasonably refuse[ ] to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

**C. Claim Two**

In his second habeas claim, Rush asserts that his trial counsel was ineffective in advising Petitioner to plead no contest to the amended information. The Nebraska Supreme Court also rejected this claim on the merits in Rush's direct appeal, reasoning as follows:

> Lastly, Rush claims trial counsel was deficient by permitting him to involuntarily enter a no contest plea. As noted above, we consider the plea

> agreement reached to be generous given the facts of this case. Rush was an active participant in the formation of his defense, as demonstrated by his numerous motions and soliloquies to the court below. To now opine that counsel should have saved Rush from himself is without merit. Rush was fully advised of the terms and consequences of his plea agreement. When advised of his options, Rush clearly understood and accepted the terms of the agreement.

Filing No. 11-3 at 14–15.

The Nebraska Supreme Court applied the *Strickland* standard in rejecting Rush's ineffective assistance of claim, and the court's conclusion is fully supported by the record. Rush was advised of the terms of the plea agreement, the nature of the charge to which he would be pleading, the rights he would be giving up by entering his plea of no contest, the possible penalties he would be facing, and the factors and information the court would consider in sentencing him. Filing No. 11-15 at 71–87, 91–93. While Rush indicated at times that he felt he had to go along with the plea agreement and that he did not believe he did anything wrong to warrant any criminal consequences, the record establishes that Rush was advised of, and understood, his options, including the option to proceed to trial on all five original felony charges, and chose to accept the plea agreement. *Id*. at 85–86, 88–90, 99–101.

Thus, upon careful examination of the records, the Court finds that Rush is not entitled to relief on Claim Two as the Nebraska Supreme Court's decision was not contrary to, nor did it involve an unreasonable application of, *Strickland*.

### D.  Rush's Argument

In concluding that both of Rush's habeas claims fail on the merits, the Court considered the argument he asserted in his brief, which the Court finds necessary to address separately here. Liberally construed, Rush argues that the Nebraska Supreme

Court's determination that the state district court did not deny his Sixth Amendment right to self-representation and that counsel was not ineffective in permitting Rush to enter an involuntary plea is based on an unreasonable determination of the facts because the record shows there was sufficient doubt as to Rush's competency to both waive his right to counsel and to enter his plea. Essentially, Rush contends that, because the state district court found he was not competent to represent himself, he was not competent to enter his no contest plea and counsel was ineffective for not objecting to the entry of his plea without a competency hearing first being conducted. *See* Filing No. 14 at 10–11. For the reasons below, Rush's argument fails.

First, Rush's habeas brief is the first time that the issue of Rush's competency to enter his no contest plea has ever been raised in the course of his criminal proceedings by anyone.[3] The Court reviewed the entire state court record and not once was any question ever raised about Rush's competency to enter his plea. Thus, to the extent Rush seeks to assert any trial court error or ineffective assistance of counsel based on his alleged lack of competency to plead, the Court cannot consider such claims as they are procedurally defaulted.

"As a general rule, federal courts are precluded from reviewing in § 2254 cases those claims which a petitioner has not yet presented to the state tribunals in the state of conviction." Holt v. Bowersox, 191 F.3d 970, 974 (8th Cir. 1999) (citing 28 U.S.C. § 2254(b)). Because Rush never presented any claims to the state courts regarding his competency, his claims are procedurally defaulted as they were not presented through

---

[3] The only reference to Rush's competency the Court could locate in the record was Rush's question to the state district court during the court's attempt to determine whether Rush understood his waiver of the right to counsel where Rush asked, "So what you trying to say? Like, I ain't – I ain't competent to stand trial or something?" Filing No. 11-15 at 20.

one complete round of state court review and Rush cannot raise these claims in a successive postconviction motion. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process); *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009) ("[A]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion.").

Though Rush asserts, under Nebraska law, that "[t]here are no procedural bars in post-conviction proceedings of issues relating to competency," Filing No. 14 at 3 (citing *State v. Saufley*, 956 N.W.2d 726, 737 (Neb. Ct. App. 2021)), the Nebraska Supreme Court has specifically "reject[ed] the broad statement . . . that a procedural bar can never apply to an issue of competence," *State v. Harms*, 315 Neb. 445, 453, 996 N.W.2d 859, 865 (2023). The Eighth Circuit likewise has "recognized competency issues are subject to procedural bar." *Lyons v. Luebbers*, 403 F.3d 585, 592–93 (8th Cir. 2005) (citing *Weekley v. Jones*, 56 F.3d 889, 894–95 (8th Cir.1995), *aff'd in part*, 76 F.3d 1459, 1461 (8th Cir.1996) (en banc)). Rush was represented by different counsel on appeal and, thus, could have raised any issues concerning his competency to plead at that time. *See Harms*, 996 N.W.2d at 865 ("[T]he due process issue of competence is procedurally barred in a postconviction action when the defendant took a direct appeal and could have, but did not, raise the issue in that direct appeal."). As Rush did not do so, his competency claims are procedurally defaulted unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

15

failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Nothing in the record suggests Rush can establish cause and prejudice to excuse any procedural default.

Moreover, regardless of any default, the record is devoid of evidence suggesting Rush was, in fact, not competent to enter his plea. As this Court has explained,

> The competency standard for waiving the right to counsel or pleading guilty is the same as the competency standard for standing trial. *Godinez v. Moran*, 509 U.S. 389, 395–400 (1993). The defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him." *Id*. at 396 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). Put another way, the defendant must have the mental capacity to "understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. . . ." *Id*. (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).

*Pestka v. Britten*, No. 4:04CV3317, 2007 WL 1345014, at *9 (D. Neb. Apr. 10, 2007).

The Court has thoroughly reviewed the state court records submitted, including the bill of exceptions containing the record of the proceedings held before the state district court, and finds that the record does not support Rush's position, let alone contain clear and convincing evidence to rebut the presumption of correctness that attaches to the state court's findings. *Lyons*, 403 F.3d at 593 (habeas petitioner has "the burden of persuasion to demonstrate, by a preponderance of the evidence, that he was incompetent"). At no time did Rush, his counsel, or the state district court express any reservations about Rush's competency and ability to understand the proceedings. The record also contains assurances from Rush himself that there was nothing wrong with him, Filing No. 11-15 at 15–16, 18, and the record also demonstrates that Rush was thoroughly engaged in the proceedings and with his counsel in mounting his defense, *see, e.g.*, *Id*. at 5–6, 25–27, 40–41, 55, 61–63.

In addition, the state district court's determination that Rush was "not capable of representing [him]self" due to his inability to answer the court's questions and follow simple directions, Id. at 22, does not suggest that the court determined that Rush was not competent to waive his right to counsel. Rather, the record shows the state district court considered Rush competent to waive his right to counsel and, thus, proceeded to ask Rush questions to ascertain whether such waiver was knowingly, intelligently, and voluntarily made. Id. at 10. However, the court was unable to make such a determination due to Rush's lack of cooperation, repeated interruptions, and failure to answer simple questions relevant to the waiver. Upon review of the record, the Court cannot conclude that the state district court's determination, and the appellate court's affirmance of that determination, was based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, the Court finds Rush's habeas claims lack merit and the petition must be dismissed with prejudice.

### III. MOTIONS FOR COUNSEL AND HEARING

Rush has requested the appointment of counsel and a hearing on his request for counsel. Filing No. 21; Filing No. 22; Filing No. 28. "[T]here is neither a constitutional nor statutory right to counsel in habeas proceedings; instead, [appointment] is committed to the discretion of the trial court." McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997). As a general rule, counsel will not be appointed unless the case is unusually complex or the petitioner's ability to investigate and articulate the claims is unusually impaired or an evidentiary hearing is required. See, e.g., Wiseman v. Wachendorf, 984 F.3d 649, 655 (8th Cir. 2021); Morris v. Dormire, 217 F.3d 556, 558–59 (8th Cir. 2000), cert. denied, 531

U.S. 984 (2000); *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). *See also* Rule 8(c) of the *Rules Governing Section 2254 Cases in the United States District Courts* (requiring appointment of counsel if an evidentiary hearing is warranted).

As the Court has determined that Rush is not entitled to relief on either of his habeas claims, the Court will deny Rush's motions for counsel and the related motion for hearing.

### IV.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability.  28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1).  The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000).  The Court has applied the appropriate standard and determined Rush is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1. Petitioner Clifford L. Rush's Petition, Filing No. 1, is denied and dismissed with prejudice.

2. The Court will not issue a certificate of appealability in this matter.

3. The Court will enter a separate judgment.

4. Petitioner's motions for status, Filing No. 25; Filing No. 26; Filing No. 27, are granted as set forth in this Memorandum and Order.

5. Petitioner's motions to appoint counsel, Filing No. 21; Filing No. 28, and motion for hearing, Filing No. 22, are denied.

Dated this 28th day of March, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge